**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ZORELINE BESS,<br><br>Plaintiff,<br><br>v.<br><br>LIFE SENIOR SERVICES, and<br>VINTAGE HOUSING, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 26-cv-00012-SEH-SH |

**OPINION AND ORDER**

Before the Court is Defendants' motion to dismiss.[1] Plaintiff asserts claims for retaliation and discrimination following Defendants' decision to terminate her employment while she was on medical leave and after she requested an accommodation. Defendants' motion asks the Court to assume the truth of facts not pled, many of which are in dispute. The Court will not engage in such an improper exercise. Still, the Court finds Plaintiff has failed to allege one of her retaliation claims, and another is unavailable under state law. Those claims will be dismissed. The rest may continue.

***Factual Background***

Taking the factual allegations in the complaint as true and viewing them in the light most favorable to the nonmoving party, Plaintiff alleges as follows:

Plaintiff Zoreline Bess ("Bess") began working as a property manager for Defendants LIFE Senior Services ("LIFE") and Vintage Housing, Inc. ("Vintage

[1] The parties have consented to a magistrate judge for rulings on dispositive motions pursuant to 28 U.S.C. § 636(c), and District Judge Sara E. Hill has referred the current motion to dismiss and joinder to the undersigned. (Dkt. Nos. 30, 33.)

Housing"), in 2016.[2] (Dkt. No. 11 ¶ 9.) In March 2023, Defendants gave Bess a new job description and, sometime after April, she began working a 29-hour schedule. (*Id.* ¶¶ 10–12.) Bess's job duties included only regular office work, such as managing community operations, collecting rent, performing accounting work, and overseeing the leasing process. (*Id.* ¶¶ 14–15.) In the seven years she provided service to Defendants, the only heavy object Bess lifted was a ream of paper, and she did not regularly need to stoop, kneel, crouch, or crawl. (*Id.* ¶ 16.) Instead, the properties where she worked employed additional staff that performed more strenuous activities. (*Id.* ¶ 16.) Bess satisfactorily performed her job duties and was never disciplined. (*Id.* ¶ 13.)

Bess has lupus. (*Id.* ¶ 8.) In June 2023, she learned she needed back surgery related to this disease. (*Id.* ¶ 17.) Bess applied for and was granted FMLA leave from Defendants beginning June 21, 2023. (*Id.* ¶¶ 18–19.) The surgery was originally scheduled to take place on that date but was later delayed until August. (*Id.* ¶¶ 18, 20.)

Bess's doctor authorized her to return to work on September 13, 2023, with restrictions in lifting, carrying, pushing, or pulling (10 pounds only); no squatting, kneeling, crawling, bending, stooping, twisting, or climbing stairs or ladders; and a requirement to perform a sit-down job only.[3] (*Id.* ¶¶ 21–22; Dkt. No. 12-7.[4]) Bess

---

[2] Bess does not distinguish between the two defendants, treating them as a single entity in her complaint. Neither defendant disputes this approach, so the Court will refer to the defendants collectively.

[3] Defendants ask the Court to find a bad faith contradiction between Bess's current allegation that she "could return to work, with a return date of September 13, 2023" (Dkt. No. 11 ¶ 21) and a prior allegation that she "was unable to return to work until September 13, 2023" (Dkt. No. 2-3 ¶ 12). (*E.g.,* Dkt. No. 19 at 4.) The Court finds no contradiction between these two allegations.

[4] As discussed below, the Court also considers certain documents that are referred to in the complaint, are central to Bess's claims, and have no dispute as to their authenticity. (*See* Section III, *infra*.)

requested an accommodation from Defendants based on these restrictions. (Dkt. No. 11 ¶ 22.)

On September 11, 2023, while Bess was still on FMLA leave, Defendants sent Bess an email stating they would not be able "to accommodate the restrictions" and would "not be able to keep you employed with Vintage Housing once your FMLA exhausts, and your last day of employment will be 9/12/2023."[5] (*Id.* ¶ 23; Dkt. No. 12-8.) At the time of this termination, Defendants had the ability to reinstate Bess to her prior position or an equivalent position with a reasonable accommodation, but Defendants did not engage in an interactive process with Bess to evaluate her ability to return to work or to assess reasonable accommodation options. (Dkt. No. 11 ¶¶ 24, 26, 28.)

***Procedural Background***

Bess has now filed suit, asserting claims for (1) interference and retaliation in violation of Family and Medical Leave Act of 1993 ("FMLA") § 105, 29 U.S.C. § 2615; (2) disability discrimination and retaliation in violation of the Oklahoma Anti-Discrimination Act ("OADA"), Okla. Stat. tit. 25, §§ 1101–1706; and (3) disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213. (Dkt. No. 11 ¶¶ 30–46.)

Defendants move to dismiss, arguing Bess has failed to state a claim upon which relief may be granted. (Dkt. Nos. 12, 24.) *See also* Fed. R. Civ. P. 12(b)(6).

---

[5] In her complaint, Bess reasonably characterizes this as being "terminated on September 11th, 2023 . . . ." (Dkt. No. 11 ¶ 23.)

## *Analysis*

### I. Standard of Review

To survive a 12(b)(6) motion to dismiss, "a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). All such reasonable inferences are resolved in the plaintiff's favor. *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013). But the "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citation modified). This is a "low bar." *Griffith v. El Paso Cnty.*, 129 F.4th 790, 815 (10th Cir. 2025).

### II. Allegations Considered

Defendants ask the Court to disregard many of Bess's factual allegations, arguing they "are made in bad faith and wholly contradict" her earlier allegations in the pleadings. (Dkt. No. 12 at 15–16.[6]) The current complaint is Bess's third. Bess filed her original petition in state court, amending it as a matter of right before she served it on Defendants. (Dkt. Nos. 2-2, 2-3.) Defendant LIFE removed to federal court and promptly moved to

[6] Page numbers refer to those in the court-provided header.

dismiss. (Dkt. Nos. 2, 10.) Rather than respond to the motion, Bess filed the current complaint.[7] (Dkt. No. 11.)

In their motion, Defendants provide no legal support for their assertion that—once an amended complaint is filed—the Court should disregard any allegations that contradict earlier statements and are made solely to circumvent a defense raised in a prior motion to dismiss. Instead, Defendants rely on cases denying a Rule 15 motion to amend.[8] *See Merrill v. Seagraves*, No. CIV-22-007-RAW-GLJ, 2024 WL 3033642 (Apr. 8, 2024) (denying motion to amend), *R&R adopted*, 2024 WL 3029508 (E.D. Okla. June 17, 2024);[9] *Goode v. Gaia, Inc*, No. 20-CV-00742-DDD-KLM, 2020 WL 7223458 (D. Colo. Dec. 8, 2020) (addressing motion to file second amended complaint); *Marchelletta v. Bergstrom*, 752 F. App'x 724, 733 (11th Cir. 2018) (addressing Rule 59(e) motion under the Rule 15(a) standard).

In any event, as noted in the factual background above, the Court does not find that Bess's allegations directly contradict her earlier pleadings.

[7] Bess appears to have been relying on her right to amend as a matter of course under Fed. R. Civ. P. 15(a)(1)(B). Defendants do not argue Bess's amendment was improper, and the Court presumes it was allowed under the rules.

[8] In reply, Defendants add additional cases, including one that finally appears to address their argument—*Scott v. Close*, No. 3:21-CV-46-SLH-KAP, 2021 WL 11699255, at *2 (Aug. 3, 2021), *R&R adopted*, 2022 WL 20563935 (W.D. Pa. Apr. 21, 2022). *Scott* notes: "Within limits, a plaintiff is permitted to make allegations in an amended complaint that contradict previous allegation[s], even where [it] is obvious that the changes were for the purpose of avoiding dismissal. At the same time, a trial judge has the authority to strike pleadings that are 'false and sham.'" *Id.* (citation modified). Defendants should not expect the Court to consider entirely new authorities contained only in their reply. In any event, as is clear from the discussion in this opinion, the Court finds no basis to declare the "new" allegations false or a sham.

[9] The court in *Merrill* also found that the proposed allegations were not directly contradictory. *Id.* at *5.

## III. Documents Considered

Defendants next argue that the Court can consider various documents attached to the motion to dismiss—and to treat the contents of those documents as true and conclusive. (*See, e.g.,* Dkt. No. 12 at 8 & n.2.) When addressing a Rule 12(b)(6) motion, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

Some of the documents included with Defendants' motion meet this requirement, and the Court has considered them. Exhibit 7 is the document referenced in paragraph 21 of the complaint, and Bess does not dispute its authenticity. (Dkt. No. 12-7.) Similarly, Exhibit 8 is the September 11 termination referenced in paragraph 23 of the complaint and is undisputed.[10] (Dkt. No. 12-8.) The Court has considered these exhibits in the factual background, above.

The Court, however, does not consider Exhibits 1 through 6, or Exhibit 9. Exhibit 1 appears to be part of a letter dated March 29, 2023, the same date that Bess alleges she was provided her new job description. (Dkt. No. 12-1.) But the exhibit is incomplete. The first page appears to be a portion (but not all) of the March letter, while the next two pages appear to be a job description dated February 2023 and signed in May of that year. (*Id.*) Moreover, Defendants treat the statements in the documents as true and urge the Court to draw inferences against Bess—including to adjudicate that the physical requirements of her job are those listed in the document (instead of those alleged by Bess) and that Bess's new position started on May 1, 2023. The Court will not do so.

[10] The Court considers this document as authentic as to the fact that the communication was made. The Court does not treat the statements in the communication as true.

Exhibit 2, meanwhile, is not central to the claims and adds nothing of material use. (Dkt. No. 12-2.) Exhibits 3 through 6 are not documents referenced in the complaint and are not central to Bess's claims. (Dkt. Nos. 12-3, 12-4, 12-5, 12-6.) The same is true of Exhibit 9. (Dkt. No. 12-9.) At the motion to dismiss stage, a defendant's arguments must generally be confined to the facts alleged by a plaintiff. This is not the place to resolve factual disputes, or even to consider additional facts a defendant wishes the plaintiff had discussed.

The Court will now turn to the parties' substantive arguments.

## IV. The FMLA

Under the FMLA, an eligible employee may take 12 workweeks of leave during any 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employee who takes FMLA leave is protected. Such employee "shall be entitled, on return from such leave" to be restored to the position she held when the leave commenced or an equivalent position. *Id.* § 2614(a)(1). Congress has made it unlawful for an employer to "interfere with, restrain, or deny the exercise" of FMLA rights (or attempt to do so), or to "discharge or . . . discriminate against any individual for opposing any practice made unlawful" by the FMLA. *Id.* § 2615(a). An employee may sue an employer who violates § 2615. *See id.* § 2617(a). The Tenth Circuit recognizes two different theories arising from this statute—an entitlement or interference theory under § 2615(a)(1) and a retaliation or discrimination theory under § 2615(a)(2). *Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1170 (10th Cir. 2006). Defendants move to dismiss Bess's claim under each theory.

### A. Bess Has Stated a Claim for FMLA Interference

Bess has plausibly alleged a claim for FMLA interference. To state an interference claim, a plaintiff must allege "(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights." *Dalpiaz v. Carbon Cnty.*, 760 F.3d 1126, 1132 (10th Cir. 2014) (citation modified).

Defendants do not dispute Bess was entitled to FMLA leave. Instead, they focus on the second and third elements—adverse action and relation of that action to her exercise of FMLA rights. (Dkt. No. 12 at 14–15; 17–18.)

To satisfy the second element, the plaintiff must allege one of the following: "she was prevented from taking the full 12 weeks' of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave."[11] *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). Unfortunately, most of Defendants' arguments depend on the Court assuming facts that contradict those in the complaint (and at times that contradict the documents on which Defendants rely). Bess has alleged that her job, as actually performed, was a desk job that had never required lifting anything heavier than a ream of paper and that she was denied reinstatement to that job following her leave. This is all that is required for the second element.

[11] In contrast to a retaliation claim, an interference claim generally arises when "an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave." *Dalpiaz*, 760 F.3d at 1132. At times, Defendants appear to argue this means that they could avoid an interference claim if they decided to terminate Bess before she returned from FMLA leave but set her actual termination date as the day after that leave ended. (Dkt. No. 12 at 14–15; Dkt. No. 19 at 7.) Defendants offer no legal basis for this argument, and it would be directly contrary to finding that interference can occur when a plaintiff is denied reinstatement following leave.

The third element, meanwhile, means that there is no claim for preventing a plaintiff from "exercising her statutory right to FMLA leave, if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 978 (10th Cir. 2017) (citation modified). With this element, the Court addresses "only whether [the employee's] firing was *related to* her taking leave, and whether she would have been fired anyway, regardless of leave." *DeFreitas v. Horizon Inv. Mgmt. Corp.*, 577 F.3d 1151, 1160 (10th Cir. 2009) (emphasis in original). "Whenever termination occurs while the employee is on leave, that timing has significant probative force." *Id.* Here, Bess alleges (and Defendants have provided documents corroborating) that Defendants decided to terminate Bess while she was on FMLA leave. Bess has further alleged that this decision was based on her use of FMLA leave. (Dkt. No. 11 ¶ 27.) Bess has met any pleadings requirements of the third element.[12]

Bess has stated a claim for FMLA interference, and Defendants' motion to dismiss will be denied.

### B. Bess Has Not Stated a Claim for FMLA Retaliation

To make out a prima facie FMLA retaliation claim, a plaintiff must show that: (1) she engaged in a protected activity; (2) the employer took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *Campbell*, 478 F.3d at 1287. The FMLA speaks in terms of discrimination against any individual "for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a). The Tenth Circuit has found the mere taking of FMLA leave is protected activity. *See, e.g., Campbell*, 478 F.3d at 1287–88. "[A]

[12] It is not clear whether Bess has the burden of establishing the third element, or whether Defendants do. *See DePaula*, 859 F.3d at 978 n.30.

retaliation claim may be brought when the employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work." *Id.*

Defendants argue Bess cannot state an FMLA retaliation claim because she never returned to work after her FMLA leave. At least one district court has rejected this argument, despite the language in *Campbell* quoted above. *See Cordova v. New Mexico*, 283 F. Supp. 3d 1028, 1043–44 (D.N.M. 2017) ("This statement was made in the context of limitations on an interference theory, not in setting out requirements for a retaliation claim"). And Bess is right that a retaliation claim can proceed simultaneously with an interference claim when the plaintiff is terminated after returning from FMLA leave but based on factors "predating the employee's return to work." *Campbell*, 478 F.3d at 1288. As *Campbell* noted, "[t]o hold otherwise would create a perverse incentive for employers to make the decision to terminate during an employee's FMLA leave, but allow the employee to return for a brief period before terminating her so as to insulate the employer from an interference claim." *Id.* The inverse, however, is not necessarily true. Employers often seek to avoid interference claims, because such claims lack the "retaliatory motive" requirement of a retaliation claim. *Id.* at 1287; *see also Metzler*, 464 F.3d at 1180 (noting that interference of FMLA rights "is a violation regardless of the employer's intent"). And *Campbell* not only assumed that the retaliation claim would arise only after reinstatement but <u>also</u> that the adverse employment action would be "based on incidents post-dating her return to work." 478 F.3d at 1287-88. Here, Bess alleges that she was terminated for events predating her return to work. The Court therefore finds Bess has only stated a claim for FMLA interference, not retaliation.

Defendants' motion to dismiss the FMLA retaliation claim will be granted.

## V. The ADA and OADA

### A. Bess Has Stated a Claim for Discrimination under the ADA and the OADA

The ADA prohibits employers from discriminating against a "qualified individual on the basis of disability in regard to . . . the . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Disability" includes "a physical or mental impairment that substantially limits one or more major life activities," *id.* § 12102(1)(A), which includes things like lifting and bending, *id.* § 12102(2)(A). The definition of disability is "construed in favor of broad coverage . . . ." *Id.* § 12102(4)(A). A "qualified individual" is someone who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Defendants argue the requirements of the OADA are coextensive with those of the ADA, and Bess does not dispute this argument. (*See* Dkt. No. 12 at 20; *see generally* Dkt. No. 15 at 9–10.) *See also, e.g., Hamilton v. Okla. City Univ.*, 911 F. Supp. 2d 1199, 1206 (W.D. Okla. 2012) (noting, in context of disability discrimination claim, "the protections provided by the OADA are co-extensive with the protections provided by federal law under the ADA" (citation modified)), *aff'd*, 563 F. App'x 597 (10th Cir. 2014).

Making a prima facie case for disparate-treatment discrimination under the ADA is "not onerous." *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015). It requires the plaintiff to show (1) she was disabled; (2) she was qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (3) she was fired because of her disability. *Id.* Defendants attack only the second element. (Dkt. No. 12 at 21–23.)

For the second element, the Court employs a two-part test: First, could the employee perform the essential functions of the job? Second, if not, were there any reasonable accommodations by the employer that would enable the employee to perform those essential functions? *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004). In making this decision, the Court looks at what activities the employee could perform at the time of the employment decision. *Frazier v. Simmons*, 254 F.3d 1247, 1256 (10th Cir. 2001).

Bess has alleged that she could perform the essential functions of the job. *See Mason*, 357 F.3d at 1119 (quoting 29 C.F.R. § 1630.2(n)(1) and noting that "essential functions" are "the fundamental job duties of the employment position"). As noted above, Bess has pled that her job involved office duties and lifting no more than a ream of paper. To argue otherwise, Defendants rely on facts outside the pleadings, namely a purported job description requiring the employee to be able to conduct a variety of postural changes (like stooping, kneeling, and crawling) and to lift objects weighing up to 25 pounds. (Dkt. No. 12 at 21.) Even if the existence of this exact job description had been pled in the complaint, it would be simply one piece of "evidence of the essential functions of the job." 42 U.S.C. § 12111(8). But Bess has pled that the actual essential functions were not so physically demanding, and Defendants have provided no legal authority that requires the Court to ignore such facts or to treat the job description as conclusive. The Tenth Circuit has in fact held the opposite. *See Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003) ("such evidence is not conclusive; an employer may not turn every condition

of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description" (citation modified)).[13]

Because Bess has alleged she could perform the essential functions of her job, the Court need not reach whether a reasonable accommodation was also alleged. *See Mason*, 357 F.3d at 1118 (noting the Court only reaches this question "*if (but only if)* the court concludes that the individual is unable to perform the essential functions" (citation modified)).

Bess has sufficiently alleged a discrimination claim under the ADA and the OADA, and Defendants' motion to dismiss will be denied.

### B. Bess Has Stated a Claim for Retaliation under the ADA

Under the ADA, it is unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To state a prima facie claim of retaliation, a plaintiff must allege that: (1) she engaged in protected opposition to discrimination; (2) a reasonable person would have found her employer's subsequent action to be materially adverse; and (3) a causal connection exists between her protected activity and the employer's action. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018). For the first element, "[p]rotected activity includes requesting an accommodation." *Aubrey v. Koppes*, 975 F.3d 995, 1015–16 (10th Cir. 2020). For the

[13] Evidence of whether a job function is essential may include many other factors, including the amount of time spent performing such functions, and the work experience of past job holders or those currently in similar jobs. *See, e.g.,* 29 C.F.R. § 1630.2(n)(3).

third, "adverse action taken in close temporal proximity to protected activity may be considered in establishing a causal connection." *Id.* at 1016.

In moving to dismiss this claim, Defendants again rely on facts outside the complaint and ask the Court to make disputed factual determinations, such as finding that Bess's "final request . . . on September 11, 2023, was unreasonable, and could not be accommodated by [Defendants] without significant undue hardship and expense . . . ." (Dkt. No. 12 at 24.) The Court cannot engage in such factfinding at this stage. Accepting the allegations in the complaint as true, Bess has alleged that (1) she requested an accommodation; (2) her employer subsequently fired her, which a reasonable person would have found to be materially adverse; and (3) a causal connection exists between her protected activity and her employer's action. Bess has stated a claim for ADA retaliation, and Defendants' motion to dismiss will be denied.

### C. Bess Has Failed to State a Claim for Retaliation under the OADA

Article III of the OADA addresses discrimination in employment. *See* Okla. Stat. tit. 25, §§ 1301–1350. Under the act, it is a "discriminatory practice" for an employer to "discharge, or otherwise to discriminate against an individual with respect to . . . the terms . . . of employment, because of . . . disability . . . ." *Id.* § 1302(A)(1). The act further creates a "cause of action for employment-based discrimination . . . ." *Id.* § 1350(A).

However, in discussing the prerequisites to a suit, the act continues: "In order to have standing in a court of law to allege discrimination arising from an employment-related matter, in a <u>cause of action</u> against an employer <u>for discrimination</u> based on . . . disability . . ., <u>or retaliation</u>, an aggrieved party" must file a charge of discrimination with

the appropriate administrative agency.[14] *Id.* § 1350(B) (emphasis added). And, elsewhere in the OADA, the act declares it a "discriminatory practice" to "retaliate or discriminate against a person because he has opposed a discriminatory practice, or because he has made a charge, filed a complaint, . . . or participated in an investigation, proceeding, or hearing under" the OADA. *Id.* § 1601(1).

In 2016, the Oklahoma Supreme Court addressed a case where an employer allegedly reduced a disabled employee's hours. *See Edwards v. Andrews*, 2016 OK 107, 382 P.3d 1045. The employee filed a complaint asserting discrimination, and the employer promptly fired them. *Id.* at 1046–47, ¶ 4. The Oklahoma Attorney General then filed suit against the employer. *Id.* The Oklahoma Supreme Court found the retaliation claim was "based solely on" the retaliation provision of section 1601, but found that part of the OADA provides no "remedy" for such retaliation. *Id.* at 1047, ¶ 5. So, instead, the Attorney General attempted to fit his claim into the cause of action for employment-based discrimination found in section 1350. *Id.* Before addressing this question, the Oklahoma Supreme Court found sufficient alternative basis to dismiss the OADA claims against the employer (because an individual cannot be a suable "employer"). *Id.* ¶ 8. But the court did not stop there. It also found that section 1601 "neither defines retaliation, nor does it provide any remedy to compensate an employee who suffers retaliation at the hands of an employer"; that the only remedies for employment discrimination are found in section 1350; and that section 1601's retaliation provision appeared to be aimed at something other than employment discrimination. *Id.* ¶ 9. "Thus," the court concluded, "the trial court erred by not dismissing the action" for retaliation. *Id.*

[14] Bess has not pled that she filed such a pre-suit charge, but Defendants do not assert this as a basis for dismissing her claims.

Defendants cite *Edwards* and cases relying on it to assert that the OADA does not recognize a cause of action for employment-related retaliation. (Dkt. No. 12 at 19–20.) Bess argues that everyone is misreading the "confusing dicta" of *Edwards*, which cannot be squared with section 1350(B)—citing *McDaniel v. Legend Energy Servs., LLC*, No. CIV-20-1278-R, 2021 WL 535862 (W.D. Okla. Feb. 12, 2021). (Dkt. No. 15 at 9.) But the *McDaniel* court did not decide that retaliation claims are allowed under the OADA; it simply asked the parties to consider certifying a question to the Oklahoma Supreme Court. *Id.* at *2. Unfortunately, the case settled before any certification could occur. *See Mills v. Amazon.com Servs., LLC*, No. 24-CV-0188-CVE-CDL, 2024 WL 3205397, at *3 n.2 (N.D. Okla. June 27, 2024).

When applying state law, this Court "must follow the most recent decisions of the state's highest court." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007). Where there is no such controlling decision, the Court must attempt to predict what the highest state court would do and may seek guidance from (1) decisions rendered by the state's lower courts, (2) decisions of federal district courts interpreting the state law in question, and (3) the general weight and trend of authority in the relevant area of law. *Id.* at 666. When looking at holdings, the Court is not limited "to the technical holdings of the cases" but also applies "considered dicta of the State Courts . . . ." *Colo. Visionary Acad. v. Medtronic, Inc.*, 397 F.3d 867, 871 (10th Cir. 2005) (citation modified). Here, if *Edwards* is not controlling, it is at least dicta indicating what the Oklahoma Supreme Court would do if a party brought a retaliation claim under section 1350. Moreover, in the years since *McDaniel*, the trend of authority has been towards finding no employment retaliation claim under the OADA. *See Mills*, 2024 WL 3205397, at *3; *Theron v. Canadian Cnty. ex rel. Bd. of Cnty. Comm'rs*, No. CIV-23-1176-G, 2024

WL 4332796, at *6 (W.D. Okla. Sept. 26, 2024); *Roberts v. AHS Hillcrest Med. Ctr., LLC*, No. 26-CV-0171-CVE-JFJ, 2026 WL 2641362, at *5 (N.D. Okla. Sept. 8, 2026). The Court predicts that the Oklahoma Supreme Court would follow the reasoning in *Edwards* and find no cause of action for employment-related retaliation under the OADA. Defendants' motion to dismiss such a claim will be granted.

### *Conclusion*

IT IS THEREFORE ORDERED that *Defendant Life Senior Services, Inc.'s Motion to Dismiss Second Amended Complaint* (Dkt. No. 12), as joined by Defendant Vintage Housing, Inc. (Dkt. No. 24) is GRANTED IN PART AND DENIED IN PART. Plaintiff's claim for retaliation under the FMLA is DISMISSED WITHOUT PREJUDICE, and Plaintiff's claim for retaliation under the OADA is DISMISSED WITH PREJUDICE. Defendants' motion is otherwise denied. The following claims remain in this case: Plaintiff's claims for (1) interference under the FMLA; (2) disability discrimination under the OADA; and (3) disability discrimination and retaliation under the ADA.

ORDERED this 29th day of September, 2026.



SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT